## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| GOSHAWK DEDICATED LIMITED, as the sole Member of Syndicate 102 at Lloyd's for the 2000 Underwriting Year of Account, and | |
| KITE DEDICATED LIMITED, f/k/a Goshawk Dedicated (No. 2) Limited, as the sole Member of Syndicate 102 at Lloyd's for the 2001-2003 Underwriting Years of Account, | **COMPLAINT** <br><br> No. _____ |
|        Plaintiffs, | |
|    vs. | |
| LIFETRADE MANAGEMENT COMPANY LLC, a Delaware Limited Liability Company, LIFETRADE ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company, LONGEVITY INVESTMENTS, LLC, a Delaware Limited Liability Company, LONGEVITY PARTNERS LLC, a Delaware Limited Liability Corporation, AMERICAN VIATICAL SERVICES, LLC, a Georgia Limited Liability Company, AVS UNDERWRITING, LLC, a Georgia Limited Liability Company, AVS SERVICING, LLC, a Georgia Limited Liability Company, RON KREITER, PHILIP R. LOY, SHARON H. LOY, JOHN D. MARCUM, RITA NEFF, ROY G. SMITH, and DOE DEFENDANTS 1-20, | |
|        Defendants. | |

## NATURE OF THE ACTION

1.     This is an action to secure and recover tens of millions of dollars of assets fraudulently transferred from American Viatical Services, LLC ("AVS") to the other Defendants.  Since 2005 through to the present, Plaintiffs have been prosecuting a claim against AVS in this Court:  Goshawk Dedicated Ltd. et al. v. American Viatical Services, LLC, No. 1:05-cv-02343-RWS (the "Goshawk Action").  In the Goshawk Action, Plaintiffs seek to recover approximately $140 million of compensatory damages from AVS as a result of a massive fraud perpetrated by AVS.  On information and belief, AVS' principals, insiders, affiliates and/or the principals and insiders of the AVS affiliates have removed from AVS during the course of the Goshawk Action, without reasonably equivalent consideration, assets worth tens of millions of dollars in an attempt to put such assets beyond the reach of Plaintiffs.

2.     This action is brought pursuant to the Uniform Fraudulent Transfer Act, O.C.G.A. §§ 18-2-70 et seq. (the "Act").  The facts of this case present the precise scenario that the Act was designed to redress.  Plaintiffs seek to invoke the remedies available under the Act to void the fraudulent transfers described in this complaint, to attach the assets fraudulently transferred to the Defendants, to enjoin

further disposition of AVS's assets, to appoint a receiver to take charge of the transferred assets, and for such other relief that the circumstances may require.

## PARTIES

### Plaintiffs

3.      Plaintiff Goshawk Dedicated Limited ("Goshawk Dedicated") is a limited liability company incorporated under the laws of England, with its principal place of business in London, and is domiciled in the United Kingdom. Goshawk Dedicated is the sole member of Lloyd's Syndicate 102 ("Syndicate 102") for the 2000 year of account.

4.      Plaintiff Kite Dedicated Limited ("Kite Dedicated"), formerly known as Goshawk Dedicated (No. 2) Limited, is a limited liability company incorporated under the laws of England, with its principal place of business in London, and is domiciled in the United Kingdom.  Kite Dedicated is the sole member of Syndicate 102 for the 2001-2003 years of account.

### Defendants

5.      Defendant Lifetrade Management Company LLC ("LMC") is, and has been at all relevant times, a limited liability company existing under and by virtue of the laws of the State of Delaware with its principal place of business in

Kennesaw, Georgia.  Upon information and belief, all of the members of LMC are citizens of States of the United States.

6.    Defendant Lifetrade Asset Management, LLC ("LAM") is, and has been at all relevant times, a limited liability company existing under and by virtue of the laws of the State of Delaware with its principal place of business in Kennesaw, Georgia.  Upon information and belief, all the members of LAM are citizens of States of the United States.

7.    Defendant Longevity Investments, LLC ("Longevity Investments") is, and has been at all relevant times, a limited liability company existing under and by virtue of the laws of the State of Delaware with its principal place of business in Fayetteville, Georgia or Kennesaw, Georgia.  Upon information and belief, all of the members of Longevity Investments are citizens of States of the United States.

8.    Defendant Longevity Partners, LLC ("Longevity Partners") is, and has been at all relevant times, a limited liability company existing under and by virtue of the laws of the State of Delaware with its principal place of business in Fayetteville, Georgia or Kennesaw, Georgia.  Upon information and belief, all of the members of Longevity Partners are citizens of States of the United States.

9.    Defendant AVS is, and has been at all relevant times, a limited liability company existing under and by virtue of the laws of the State of Georgia

with its principal place of business in Kennesaw, Georgia.  AVS is a "debtor"

within the meaning of the Act and as defined under O.C.G.A. § 18-2-71(6).  Upon

information and belief, all of the members of AVS are citizens of States of the

United States.  Plaintiffs have substantial claims against AVS and are "creditors"

of AVS within the meaning of the Act and as defined under O.C.G.A. § 18-2-

71(4).

10.    Defendant AVS Underwriting, LLC ("AVS Underwriting") is, and

has been at all relevant times, a Georgia limited liability company existing under

and by virtue of the laws of the State of Georgia with its principal place of business

in Kennesaw, Georgia.  Upon information and belief, all of the members of AVS

Underwriting are citizens of States of the United States.

11.    Defendant AVS Servicing, LLC ("AVS Servicing") is, and has been

at all relevant times, a limited liability company existing under and by virtue of the

laws of the State of Georgia with its principal place of business in Kennesaw,

Georgia.  Upon information and belief, all of the members of AVS Servicing are

citizens of States of the United States.

12.    Defendant Philip R. Loy ("Loy") is a Georgia citizen and, at all

relevant times, operated, conducted, engaged in or carried on a business or

business venture in the State of Georgia.

13.     Defendant Sharon H. Loy, upon information and belief, is a New Mexico citizen and, at all relevant times, operated, conducted, engaged in or carried on a business or business venture in the State of Georgia.

14.     Defendant John D. Marcum ("Marcum"), upon information and belief, is a Georgia citizen and, at all relevant times, operated, conducted, engaged in or carried on a business or business venture in the State of Georgia.

15.     Defendant Roy G. Smith ("Smith"), upon information and belief, is a Georgia citizen and, at all relevant times, operated, conducted, engaged in or carried on a business or business venture in the State of Georgia.

16.     Defendant Rita Neff ("Neff"), upon information and belief, is a Georgia citizen and, at all relevant times, operated, conducted, engaged in or carried on a business or business venture in the State of Georgia.

17.     Defendant Ron Kreiter ("Kreiter"), upon information and belief, is a Kentucky citizen and, at all relevant times, operated, conducted, engaged in or carried on a business or business venture in the State of Georgia.

18.     Doe Defendants 1-20 are presently unknown individuals and/or entities who are transferees or subsequent transferees of assets fraudulently transferred by the debtor, AVS, at any time during 2008 through the present.  The

Doe Defendants include, but are not limited to, presently unknown members of the limited liability companies named as Defendants.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens or subjects of a foreign state and each and every Defendant is a citizen of a State of the United States, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendants, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because (i) Defendants Longevity Partners, Longevity Investments, AVS, AVS Underwriting, AVS Servicing, LMC, and LAM have their respective principal places of business within this district; (ii) because Defendants Loy, Neff, Smith, and Marcum reside in this District; and (iii) because a substantial part of the events giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

### The AVS Buy-Out

21.     Longevity Partners purchased AVS pursuant to a purchase agreement that is dated September 15, 2010 (the "Buy-Out").

22.     Participants in the Buy-Out have stated the date and price of the Buy-Out in conflicting ways:

a)      On October 18, 2010, the Atlanta Business Chronicle reported that John F. "Sandy" Smith, Esq., of Womble Carlyle Sandridge & Rice LLP stated that Womble Carlyle had handled a "$40 million sale" of AVS to Longevity Partners.  Upon information and belief, Womble Carlyle represented AVS in negotiating the Buy-Out.

b)      An October 26, 2010 article in The Life Settlements Report quotes Attorney Smith of Womble Carlyle as stating that an October 18, 2010, press release announcing the Buy-Out was "premature", and that he could not tell whether the sale would happen.  The same article also states that in early October 2010, Defendant Loy denied that any sale of AVS was impending.

c)      A December 7, 2012 article in The Life Settlements Report cites Defendant Smith as saying that Longevity Partners bought AVS for $19 million and that Longevity Partners has paid Defendant Loy $10 million in cash and issued Defendant Loy a promissory note for the balance owed.

d)      Defendant Loy, represented by James E. Connelly, Esq. and Mark A. Rogers, Esq. of Womble Carlyle Sandridge & Rice LLP, filed a verified complaint in Fulton County Superior Court on or about November 6, 2012, against

Longevity Partners (the "Fulton County Action"), alleging, *inter alia*, that the Buy-Out took place on September 15, 2010.

   e) Defendants Longevity Partners and AVS Underwriting filed a verified complaint in Cherokee County Superior Court on or about December 31, 2012, against Defendants Loy and AVS (the "Cherokee County Action"), alleging, *inter alia*, that the Buy-Out took place in September 2010 pursuant to a purchase agreement dated September 15, 2010.

   23. Upon information or belief, as part of the Buy-Out, Defendant Loy and Defendant Sharon Loy, together, received (i) two cash payments of $3.5 million, paid on September 15, 2010 and October 1, 2010; (ii) a $12 million promissory note from Longevity Partners to be paid out (with interest) in seven annual installments of $2,304,869 (the first installment of which was made on or about September 15, 2011); and (iii) an amount equal to all of the cash on hand at AVS at the time of the closing of the Buy-Out—an amount that was to be no less than $800,000—paid out to Defendants Loy and Sharon Loy over 10 monthly installment payments.  Upon information and belief, Defendant Loy and Defendant Sharon Loy, together, are to also receive as part of the Buy-Out annual "earnout" payments calculated from certain revenues and cash receipts received by Longevity Partners after the Buy-Out.

**The Relationship of the Defendants**

24.     At all relevant times, AVS, AVS Underwriting, and AVS Servicing have been affiliates, siblings, and/or subsidiaries of one another, all under common ownership and control.

25.     At all relevant times after the Buy-Out, AVS and AVS Underwriting have been owned by Longevity Partners.

26.     Longevity Partners is part of the Lifetrade family of companies.

27.     Longevity Investments is the Manager of Longevity Partners.

28.     Longevity Partners is the Manager of LAM.

29.     LMC is a managing company for Lifetrade, and manages certain Lifetrade funds.  LMC is part of the AVS Group.

30.     The term "AVS Group" has been used on the Web sites of LMC and AVS Servicing to describe the AVS Group members as including LMC, AVS, AVS Underwriting, and AVS Servicing.

31.     Upon information and belief, the AVS Group is not a legal entity, but is, instead, a trade name used by the Defendants in describing the companies comprising the AVS and Lifetrade family of companies, which include AVS Underwriting, AVS Servicing, Longevity Partners, Longevity Investments, LMC, and LAM  (collectively referred to herein as the "Corporate Defendants").

32.     Upon information and belief, the Defendants operated AVS and AVS Underwriting as a single entity.

33.     As described by Defendant Loy at his June 1, 2012 deposition in the Goshawk Action, AVS was set up and is used by the Defendants as the vehicle for the intake and distribution of funds among the Defendants and to issue life expectancies and reports through AVS Underwriting.

34.     In a December 26, 2012 letter from AVS to its clients, Defendant Kreiter, Compliance Counsel at AVS, wrote that AVS used AVS Underwriting as a "dba" and that AVS "would no longer be doing business under that name".

35.     Defendant Loy alleges in the Fulton County Action that AVS Underwriting is a "shell entity whose purpose was to be used substantially as a trade name for AVS."

36.     Upon information and belief, at all relevant times after the Buy-Out until approximately November 6, 2012, the Corporate Defendants have operated as one entity, but under different names.

37.     Defendants Loy, Sharon Loy, Marcum, and Smith (collectively, the "Individual Defendants") have been members, owners and/or senior management of the Corporate Defendants and held various interlocking ownership interests, officerships, and directorships within the Corporate Defendants.

(a)   <u>Loy</u>.  Defendant Loy is the founder of AVS (including AVS Underwriting) and AVS Servicing.  At all relevant times, Defendant Loy has been the President, Managing Partner, and Managing Director of AVS, the co-organizer (along with Defendant Marcum) of AVS Servicing, and the President of AVS Servicing.  At all relevant times until the Buy-Out, Defendant Loy was a one-half owner of AVS.   At all relevant times after the Buy-Out, Defendant Loy has been a part owner of Longevity Partners.  At all relevant times from the Buy-Out until December 24, 2012, Defendant Loy was the President, Member, and Manager of AVS Underwriting.

(b)   <u>Sharon H. Loy</u>.  Defendant Sharon Loy is the former wife of Defendant Loy.  At all relevant times until the Buy-Out, Defendant Sharon Loy was a one-half owner of AVS including AVS Underwriting.  At all relevant times after the Buy-Out, Defendant Sharon Loy has been a partner at AVS, and part owner of Longevity Partners.

(c)   <u>Marcum</u>.  At all relevant times, Defendant Marcum has been the co-organizer (along with Defendant Loy) of AVS Servicing, the Vice President of AVS Servicing, a Manager of LAM, Manager of Longevity Partners, and part-owner of Longevity Partners.  At all relevant times after the Buy-Out, Defendant Marcum has been the Vice-President of AVS.

(d)      Smith.  At all relevant times, Defendant Smith has been the Managing Director of LMC and the majority owner of Longevity Partners.  At all relevant time after the Buy-Out, Defendant Smith has been part-owner of AVS and owner of AVS Servicing.

38.      Defendant Neff, the wife of Defendant Loy, is the Chief Operations Manager of AVS and has worked at AVS since 1999.  Upon information and belief, Defendant Neff is the executive currently in charge of AVS Underwriting.

39.      Upon information and belief, Defendant Kreiter is Compliance Counsel for AVS and has worked for AVS since 2004.

40.      Upon information and belief, the Corporate Defendants and the Individual Defendants, through their common ownership and management structure, have improperly diverted the assets of AVS to the detriment of AVS's creditors, including Plaintiffs.

41.      Upon information and belief, the Defendants have ignored the formalities of corporate structure among the Corporate Defendants and AVS and have commingled the assets of AVS and the Corporate Defendants.

42.      The allegations in the Fulton County Action and the Cherokee County Action include admissions that the Defendants have ignored corporate formalities and commingled the assets of AVS and the Corporate Defendants.

(a)     For example, in the Fulton County Action, Defendant Loy
alleges that (i) the principals of Longevity Partners have threatened to transfer to
Longevity Partners a subsidiary of AVS holding $450,000 in liquid assets; (ii)
Longevity Partners threatened to remove AVS's technology and property in the
form of AVS's proprietary computer program and database, which Defendant Loy
alleges has significant value; (iii) Longevity Partners has threatened to change
passwords relating to AVS's databases, fire numerous of AVS's most senior and
experienced employees, and move some of AVS's operations and assets to
Longevity Partners; and (iv) after the Buy-Out, Defendant Smith "has taken funds
from AVS Servicing, LLC to pay his personal insurance expenses totaling over
$200,000," that Defendants Longevity Partners and Marcum were "aware of such
misuse of AVS's funds and facilitated same," and that this alleged conversion of
funds "materially [and] adversely effected [sic] the value of AVS."

(b)     In the Cherokee County Action, Longevity Partners and AVS
Underwriting allege that Defendant Loy commingled the assets of AVS
Underwriting and AVS.

**The Underlying Goshawk Action**

43.     On or about September 8, 2005, Plaintiffs commenced the Goshawk
Action.  Plaintiffs there allege that AVS made representations to Plaintiffs about

AVS' preparation of life expectancies, that those representations by AVS were relied upon by Plaintiffs and critical to Plaintiffs' decision to issue Contingent Cost Insurance ("CCI"), that AVS representations were false and fraudulent, and that as the result of those false representations and Plaintiffs' reliance on them, Plaintiffs became potentially liable to CCI assureds and has paid out millions of dollars in settlement of claims and in buying back Plaintiffs' exposure.  The fraudulent conduct and dishonesty of AVS has damaged Plaintiffs in an amount not less than $140 million.  Plaintiffs' claims against AVS in the Goshawk Action are extensive, well-substantiated, and are likely to succeed on the merits.

44.     The Goshawk Action remains pending.

45.     At all relevant times before and after the Buy-Out, each of the Defendants knew or should have known of the Goshawk Action, and that Plaintiffs had asserted claims against AVS for damages in an amount greater than $140 million.

**The Fraudulent Transfers**

46.     Longevity Partners valued AVS at between $20 million and $40 million when it acquired AVS in 2010 in the Buy-Out.  Upon information and belief, AVS now has no ability to pay even its own overdue legal bills of approximately $1 million, and is deemed by Longevity Partners to be "virtually

worthless."  On information and belief, the assets of AVS giving it a net worth of $20 million to $40 million late in 2010 were removed from AVS, without reasonably equivalent consideration, since the Buy-Out, and while AVS has operated under the direction and control of the Corporate and Individual Defendants.

47.    The Corporate Defendants, as the parent and sibling companies of AVS, and the Individual Defendants, as the common owners and officers of AVS and/or one or more of the Corporate Defendants, on information and belief, caused all or part of AVS's assets to be transferred away from AVS, without consideration to AVS of reasonably equivalent value being paid, to themselves, or to others for the benefit of the Corporate and Individual Defendants, during the pendency of the Goshawk Action and particularly between the time of the Buy-Out (the final third of 2010 when AVS was valued at $20 million to $40 million) and the end of 2012 (when AVS was valued as "virtually worthless").  The facts regarding the amounts transferred among the Defendants are peculiarly within the knowledge, possession, and control of the Defendants.  After a reasonable opportunity for discovery in this action, Plaintiffs will likely have evidentiary support for their contention that the Defendants and AVS transferred all or part of AVS's assets to the Defendants.

48.     In light of the close-knit, common ownership and management of AVS and the Corporate Defendants, the transfers of AVS's assets were not the result of any arms-length transaction or in exchange for consideration of reasonably equivalent value.

49.     In light of the close-knit, common ownership and management of AVS and the Corporate Defendants, the transfers of AVS's assets were not made in good faith by the Defendants or AVS, and the Defendants did not receive the assets in good faith.

50.     The assets taken from AVS and transferred to the Defendants were "assets" of AVS, as defined by O.C.G.A. § 18-2-71(2), and the transfer of the assets to the Defendants were "transfers" as defined by O.C.G.A. § 18-2-71(12).

51.     At all relevant times, each Defendant knew, or should have known, that the transfers of AVS's assets were made by AVS while Plaintiffs' claims were pending against AVS in the Goshawk Action, and that because of those transfers AVS had insufficient funds to pay the amount sought by Plaintiffs in the Goshawk Action, or a significant portion thereof.

52.     As a result of the transfers of AVS's assets, AVS was rendered insolvent, inadequately capitalized, and incapable of paying its debts, including those owing to Plaintiffs, as they became due.

53.     The common owners and management of AVS and the Defendants set up the Buy-Out and the subsequent transfer of AVS's assets with the understanding that AVS would not retain sufficient assets to satisfy the claims of its creditors, including the Plaintiffs.

54.     After the transfers of AVS's assets, the sum of AVS's debts, including its debt to Plaintiffs, was greater than all of AVS's assets at fair valuation.

55.     On information and belief, AVS received little to no consideration for its transfers of AVS's assets, and AVS did not receive a reasonably equivalent value in exchange for the transfer of its assets.  AVS was insolvent or became insolvent as the result of such transfers.

## COUNT I

## Violation of O.C.G.A. § 18-2-74(a)(2)(A)

56.     Plaintiffs reallege paragraphs 1 through 55 above, and incorporate the same as if fully set forth below.

57.     Plaintiffs are "creditors" as defined in O.C.G.A. § 18-2-71(4), as Plaintiffs have a right to payment from AVS for the claims alleged in the Goshawk Action.

58.     AVS is a "debtor" as defined in O.C.G.A. § 18-2-71(6), and AVS is liable to Plaintiffs in an amount of approximately $140 million on the claims Plaintiffs have asserted in the Goshawk Action.

59.     In the final third of 2010, on information and belief, Defendant Longevity Partners purchased all of the membership interests of AVS and AVS Underwriting for between $20 million and $40 million.

60.     Thereafter, on information and belief, the Defendants and AVS caused a significant portion of AVS's assets to be transferred to one or more of the Defendants.  The facts regarding the timing and amounts of these transfers are peculiarly within the possession and control of AVS and the Defendants. After a reasonable opportunity for discovery in this action, Plaintiffs will likely have evidentiary support for this contention that all or part of AVS's assets was transferred to the Defendants.

61.     The AVS assets transferred to the Defendants were "assets" of AVS within the meaning of O.C.G.A. § 18-2-71(2).

62.     Because the assets transferred were "assets" of AVS, AVS's transfers to the Defendants were "transfers" of "assets" within the meaning of O.C.G.A. § 18-2-71(12).

63.     At all relevant times, AVS did not receive a reasonably equivalent value in exchange for its assets being transferred to the Defendants.

64.     AVS's assets were transferred to the Defendants when AVS was engaged in a business or transaction for which the remaining assets of AVS were unreasonably small in relation to such business or transaction because AVS knew its assets were less than the amount sufficient to restore the Plaintiffs to the financial position they occupied before AVS's fraud in connection with the CCI.

65.     The AVS assets transferred to the Defendants were assets of AVS that could have been applied toward Plaintiffs' claim against AVS.

66.     Each of Defendants is either an initial or subsequent transferee of the assets removed from AVS and transferred to the Defendants.

67.     Plaintiffs have been injured as a result of the fraudulent transfers to the Defendants, and stand to be further injured if these fraudulent transfers are not remedied.

## COUNT II

### Violation of O.C.G.A. § 18-2-74(a)(2)(B)

68.     Plaintiffs reallege paragraphs 1 through 67 above, and incorporate the same as if fully set forth below.

69.     Plaintiffs are "creditors" as defined in O.C.G.A. § 18-2-71(4), as Plaintiffs have a right to payment from AVS for the claims alleged in the Goshawk Action.

70.     AVS is a "debtor" as defined in O.C.G.A. § 18-2-71(6), and AVS is liable to Plaintiffs in an amount of approximately $140 million on the claims Plaintiffs have asserted in the Goshawk Action.

71.     In or about the final third of 2010, on information and belief, Defendant Longevity Partners purchased AVS for approximately $20 million to $40 million.

72.     Thereafter, on information and belief, the Defendants and AVS caused a significant portion of AVS's assets to be transferred to the Defendants. The facts regarding the timing and amounts of these transfers are peculiarly within the possession and control of AVS and the Defendants. After a reasonable opportunity for discovery in this action, Plaintiffs will likely have evidentiary support for this contention that all or part of AVS's assets was transferred to the Defendants.

73.     The AVS assets transferred to the Defendants were "assets" of AVS within the meaning of O.C.G.A. § 18-2-71(2).

74.     Because the assets transferred were "assets" of AVS, AVS's transfers to the Defendants were "transfers" of "assets" within the meaning of O.C.G.A. § 18-2-71(12).

75.     At all relevant times, on information and belief, AVS did not receive a reasonably equivalent value in exchange for its assets being transferred to the Defendants.

76.     When AVS transferred the assets of AVS to the Defendants, AVS intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due because AVS knew its assets were less than the amount sufficient to restore the Plaintiffs to the financial position they occupied before AVS's fraud in connection with the CCI.

77.     The AVS assets transferred to the Defendants were assets of AVS that could have been applied toward Plaintiffs' claim against AVS.

78.     Each of the Defendants is either an initial or subsequent transferee of the assets removed from AVS and transferred to the Defendants.

79.     Plaintiffs have been injured as a result of the fraudulent transfers by AVS to the Defendants, and stand to be further injured if these fraudulent transfers are not remedied.

## COUNT III

### Violation of O.C.G.A. § 18-2-75(a)

80.    Plaintiffs reallege paragraphs 1 through 79 above, and incorporate the same as if fully set forth below.

81.    Plaintiffs are "creditors" as defined in O.C.G.A. § 18-2-71(4), as Plaintiffs have a right to payment from AVS for the claims alleged in the Goshawk Action.

82.    In or about the final third of 2010, on information and belief, Defendant Longevity Partners purchased AVS for approximately $20 million to $40 million.

83.    Thereafter, on information and belief, the Defendants and AVS caused a significant portion of AVS's assets to be transferred to the Defendants. The facts regarding the timing and amounts of these transfers are peculiarly within the possession and control of AVS and the Defendants. After a reasonable opportunity for discovery in this action, Plaintiffs will likely have evidentiary support for this contention that all or part of AVS's assets was transferred to the Defendants.

84.    Plaintiffs' right to payment from AVS for the claims alleged in the Goshawk Action arose before AVS's assets were removed from and transferred to the Defendants.

85.    AVS is a "debtor" as defined in O.C.G.A. § 18-2-71(6), and AVS is liable to Plaintiffs in an amount of approximately $140 million on the claims Plaintiffs have asserted in the Goshawk Action.

86.    The AVS assets transferred to the Defendants were "assets" of AVS within the meaning of O.C.G.A. § 18-2-71(2).

87.    Because the assets transferred were "assets" of AVS, AVS's transfers to the Defendants were "transfers" of "assets" within the meaning of O.C.G.A. § 18-2-71(12).

88.    At all relevant times, on information and belief, AVS did not receive a reasonably equivalent value in exchange for its assets being transferred to the Defendants.

89.    AVS was or became insolvent as a result of its assets being transferred to the Defendants such that AVS cannot pay the full amount of the ongoing claims asserted by Plaintiffs against AVS in the Goshawk Action or even a small portion thereof offered as a settlement of the Goshawk Action.  The AVS assets transferred

to Defendants were assets of AVS that could otherwise have been applied toward Plaintiffs' claims against AVS.

90.     At all relevant times, as a result of its fraud in connection with the CCI and the claims the Plaintiffs had asserted against AVS in the Goshawk Action, AVS and the Defendants knew, or should have known, that AVS was indebted to the Plaintiffs in an amount sufficient to restore the Plaintiffs to the financial position they occupied before AVS's fraud in connection with the CCI.

91.     Each of Defendants is either an initial or subsequent transferee of the assets removed from AVS and transferred to the Defendants.

92.     Plaintiffs have been injured as a result of the fraudulent transfers to the Defendants, and stand to be further injured if these fraudulent transfers are not remedied.

## <u>COUNT IV</u>

**Civil Conspiracy in Connection with the Transfers of AVS's Assets**
**(<u>Against the Individual Defendants, Defendant Neff, and Defendant Kreiter</u>)**

93.     Plaintiffs reallege paragraphs 1 through 92 above, and incorporate the same as if fully set forth below.

94.     At all relevant times, the Individual Defendants, Defendant Neff, and Defendant Kreiter each had either a direct or indirect ownership and/or

management interest in AVS, and/or one or more of the Corporate Defendants or one or more of the other affiliated AVS Group of companies.

95.     Each of the Individual Defendants, Defendant Neff, and Defendant Kreiter had a financial incentive to manipulate the assets and financial structure of AVS, the Corporate Defendants and the AVS Group of companies for their own personal benefit.

96.     On information and belief, in or about the final third of 2010, the Individual Defendants, Defendant Neff, and Defendant Kreiter agreed and conspired to sell AVS to Longevity Partners and to thereafter remove the assets of AVS and distribute those assets among the Defendants.  After a reasonable opportunity for discovery in this action, Plaintiffs will likely have evidentiary support for this contention that the Individual Defendants, Defendant Neff, and Defendant Kreiter agreed and conspired to sell AVS to Longevity Partners and to thereafter remove the assets of AVS and distribute those assets among the Defendants.

97.     On information and belief, the Individual Defendants, Defendant Neff, and Defendant Kreiter agreed and worked in concert to arrange the Buy-Out, and the subsequent transfers to the Defendants, notwithstanding that the Individual Defendants, Defendant Neff, and Defendant Kreiter had actual knowledge of the

Plaintiffs' claims against AVS in the Goshawk Action.  On information and belief, the Individual Defendants, Defendant Neff, and Defendant Kreiter agreed, acted in concert, and conspired to fraudulently transfer the assets of AVS to the Corporate Defendants, other members of the AVS Group of companies, and to the Individual Defendants.

98.     On information and belief, each of Individual Defendants, Defendant Neff, and Defendant Kreiter personally benefitted from the transfers by, among other things, their receipt of the assets transferred away from AVS through dividends or other forms of payment.

99.     Given the individual positions of the Individual Defendants, Defendant Neff, and Defendant Kreiter as executives, owners, and/or members of management in one or more members of the AVS, the Corporate Defendants, and/or another member of the AVS Group of companies, the Individual Defendants, Defendant Neff, and Defendant Kreiter acting together and with a common purpose and design exercised a peculiar power of coercion over AVS, the Corporate Defendants, and/or another member of the AVS Group of companies that was far greater than any one of the Individual Defendants, Defendant Neff, and Defendant Kreiter could have effected alone.

100.   On information and belief, each of the Individual Defendants, Defendant Neff, and Defendant Kreiter committed one or more overt acts in furtherance of their conspiracy to fraudulently transfer the assets of AVS for little to no consideration as follows:

(a)   Defendant Loy (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

(b)   Defendant Sharon Loy (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

(c)     Defendant Marcum (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

(d)     Defendant Smith (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

(e)     Defendant Neff (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends

or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

(f)    Defendant Kreiter (1) caused AVS to be sold to Longevity Partners; (2) caused AVS to transfer AVS's assets to one or more of its sibling companies and its new owner, Defendant Longevity Partners; (3) caused the assets removed from AVS to be up-streamed to the parent companies of Longevity Partners; (4) caused the assets removed from AVS to be paid out as cash dividends or other forms of payment to the ultimate owners of the Corporate Defendants, including the Individual Defendants.

101.   As a result of the conspiracy of the Individual Defendants, Defendant Neff, and Defendant Kreiter, AVS's assets were transferred away from AVS, while AVS was insolvent, or leaving AVS insolvent and unable to pay Plaintiffs' substantial claims against AVS.

102.   Plaintiffs have been injured as a result of the conspiracy because as a result of the fraudulent transfers, AVS cannot pay the liability AVS has to Plaintiffs in an amount sufficient to restore the Plaintiffs to the financial position they occupied before AVS's fraud in connection with the CCI.

103.   As a result of their conspiracy to commit fraudulent transfers, each of the Individual Defendants, Defendant Neff, and Defendant Kreiter is jointly and

severally liable to the Plaintiffs for the entire amount of AVS's liability on the Plaintiffs' claims in the Goshawk Action that AVS is unable to pay.

WHEREFORE, Plaintiffs pray:

1.  For entry of judgment in favor of Plaintiffs and against Defendants;

2.  For an avoidance of the fraudulent transfers alleged herein to the extent necessary to satisfy Plaintiffs' claims against AVS;

3.  For an attachment or other provisional remedy against the assets transferred to Defendants;

4.  For a temporary injunction against further disposition by Defendants of the assets transferred or of other property;

5.  For a permanent injunction against further disposition by Defendants of the assets transferred or of other property;

6.   For the appointment of a receiver to take charge of the transferred assets or of other property of the Defendants;

7.  For an award of money damages in the amount of Plaintiffs' claims against AVS; and

8.      For such other and further relief as the circumstances may

require and that this Court deems just and proper.

Dated:  January 14, 2013

Of counsel:

/s/ John H. Fleming

R. Steven Anderson                    John H. Fleming (263250)
Raenu Barod                           Valerie S. Sanders (625819)
Michael J. Levin                      Stacey McGavin Mohr (619207)
Kyle M. Medley                        SUTHERLAND ASBILL & BRENNAN LLP
BARGER & WOLEN LLP                    999 Peachtree Street, NE, Suite 2300
10 E. 40th Street, 40th Floor         Atlanta, Georgia  30309-3996
New York, New York  10116             Tel.    404.853.8000
Tel.    212.557.2800                  Fax     404.853.8806
Fax    212.557.2884                   john.fleming@sutherland.com
sanderson@bargerwolen.com             valerie.sanders@sutherland.com
rbarod@bargerwolen.com                stacey.mohr@sutherland.com
mlevin@bargerwolen.com
kmedley@bargerwolen.com

*Attorneys for Plaintiffs Goshawk Dedicated Ltd. & Kite Dedicated Ltd.*

-32-